UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JULIE[1] M. OLIVERIO, | ) No. ED CV 14-1507-PLA |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) |

## I.

## PROCEEDINGS

Plaintiff filed this action on July 30, 2014, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 29, 2014, and September 18, 2014. Pursuant to the Court's Order, the parties filed a Joint

---

[1] The Court notes that based on the record [see, e.g., Administrative Record ("AR") at 19, 154, 198, 206], it appears that plaintiff's first name is "Julie," not "Jullie," which is how it appears on the caption of the Complaint and Joint Stipulation, as well as the Court's docket.

Stipulation on March 30, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on December 22, 1968. [AR at 35, 48, 154.] She has past relevant work experience as a licensed vocational nurse and care provider. [AR at 35, 78-79.]

On February 25, 2011, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that she has been unable to work since October 26, 2005. [AR at 23, 154.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 23, 106.] A hearing was held on October 24, 2012, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 42-83.] A vocational expert ("VE") also testified. [AR at 76-81.] On November 21, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from October 26, 2005, the alleged onset date, through November 21, 2012, the date of the decision. [AR at 23-37.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 19.] When the Appeals Council denied plaintiff's request for review on May 7, 2014 [AR at 14-16], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 26, 2005, the alleged onset date.[2]  [AR at 25.]  At step two, the ALJ concluded that plaintiff has the following severe impairments:

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2012.  [AR at 25.]

4

> [R]ight internal knee derangement/chondromalacia with partial anterior cruciate ligament (ACL) tear, small osteochondroma medial aspect proximal fibular metaphysic, chronic venous insufficiency, plantar fasciitis with spurs, history of left foot crush injury, irritable bowel syndrome (IBS), obstructive sleep apnea (OSA), obesity, insomnia, major depressive disorder, generalized anxiety disorder, and social phobia.

[AR at 26.] The ALJ also determined that plaintiff had the nonsevere impairments of nausea; left knee impairment; left shoulder impairment; right foot/ankle impairment; well-controlled asthma; and well-controlled hypothyroidism, status post thyroidectomy. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[4] except as follows:

> [C]laimant is unable to walk on uneven surfaces; she must shift from a sitting position to a walking/standing position every hour; she can resume sitting after up to 15 minutes of standing/walking; she can understand, remember, and carry out simple job instructions, but she would be unable to perform work that would require directing others, abstract thought, or planning; she can maintain attention and concentration to perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements; she can have occasional interaction with coworkers and the general public and frequent interaction with supervisors; and she can work in an environment with occasional changes to the work setting and occasional work-related decision making.

[AR at 28.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a licensed vocational nurse or care provider. [AR at 35, 79-80.] At step five, based on plaintiff's RFC, vocational factors, and

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "addresser" (Dictionary of Occupational Titles ("DOT") No. 209.587-010), "cutter and paster -- press clippings" (DOT No. 249.587-014), and "lens inserter" (DOT No. 713.687-026). [AR at 36-37, 79-80.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 26, 2005, through November 21, 2012, the date of the decision. [AR at 37.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he failed to properly consider plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 4.] Specifically, she contends that the ALJ ignored and disregarded her testimony, and provided legally insufficient reasons for rejecting her testimony. [JS at 9-16.]

As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A.  LEGAL STANDARD**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities;

(4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim, 763 F.3d at 1163; 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 28-29, 32, 35], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 725 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. at 1138 (quoting Lester, 81 F.3d at 834) (internal quotation marks omitted). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (citation and internal quotation marks omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

**B.    BACKGROUND**

The ALJ summarized plaintiff's subjective symptom testimony as follows:

> The claimant alleged she was unable to work at the level of sustained gainful activity due to the combined effects of her physical and mental impairments as well as the side effects of prescribed medications. In regard to mental impairments, she alleged she was limited by depression, daily anxiety attacks, and anger. In regard to physical impairments, she asserted she was limited by constant pain in her knees, pain and numbness in her feet, and nausea. [¶] In terms of exertional limitations from her multiple impairments, the claimant testified it was difficult for her to walk, she could only be on her feet for about 20 minutes, she had difficulty lifting her 13-pound grandson, she had trouble sitting for more than an hour or so because her feet became numb, and she had to lay down most of the day because of a lack of energy. In terms of nonexertional limitations, the claimant testified she had a hard time staying on task to finish what she started and she had difficulty with

concentration and memory. The claimant contended at the hearing she was not able to sleep well due to pain and having to take medication every four hours. The claimant asserted limiting side effects of medication including sleepiness, memory problems, and nausea.

[AR at 28-29.] The ALJ noted that plaintiff's function report reflected complaints that were of the same general nature as her testimony. [AR at 29 (citation omitted).]

The ALJ found plaintiff to be "partially credible" [AR at 31], as follows:

> The credibility of the claimant's allegations regarding the severity of the claimant's physical symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The presence of the claimant's multiple severe and nonsevere physical impairments since the alleged onset date is well documented in records from reports related to the claimant's workers' compensation claim, from primary treating physicians' notes, from emergency room notes, and notes related to recent pain management treatment. These records demonstrate the claimant received routine conservative treatment including the following: prescription medications for pain, inflammation, muscle spasm, gastritis, sleep disorder, and insomnia; physical therapy; home exercises; an ankle brace; and acupuncture. The lack of more aggressive treatment including surgical intervention for the more severe musculoskeletal impairments, is inconsistent with the alleged severity of the functional limitations imposed by the claimant's impairments and suggests the claimant's symptoms and limitations were not as severe as the claimant alleged. All of the claimant's multiple impairments combined to limit the claimant to the sedentary residual functional capacity found herein. Consistent with the claimant's subjective complaints, the undersigned finds it was the claimant's impairments of the right knee and left foot/ankle that were most limiting. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.
>
> . . . .
>
> The credibility of the claimant's allegations regarding the severity of the claimant's mental symptoms and limitations is also diminished because those allegations are also greater than expected in light of the objective evidence of record. The claimant was initially treated for a mental impairment by [her] primary treating physician, who prescribed Effexor for anxiety. Beginning on August 24, 2006, the claimant was provided medication management by psychiatrist, John J. Kohut, M.D., for diagnoses of major depressive disorder, recurrent, generalized anxiety disorder, and social phobia. The claimant also received one-on-one counseling for about a year in 2006 and 2007 and again for about five months in 2009. The documented positive clinical findings from treating sources were limited to the claimant being disheveled, tearful, and depressed with impaired memory and judgment and reporting some suicidal ideation without any history or current plans of harming herself. These relatively benign documented clinical findings from mental status examinations since the alleged onset date and the lack of more aggressive treatment do not support more restrictive functional limitations than those assessed herein.
>
> . . . .

> In sum, the residual functional capacity assessed by this decision . . . is supported by the evidence as a whole. The claimant's subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms.

[AR at 29, 32, 35 (citations omitted).]

## C. ANALYSIS

The ALJ discounted plaintiff's complaints of disabling physical and mental impairment because (1) she received only routine, conservative treatment; and (2) her allegations were greater than expected in light of the objective medical evidence.

### 1. Conservative Treatment

The ALJ indicated that plaintiff's "routine conservative treatment" included "prescription medications for pain, inflammation, muscle spasm, gastritis, sleep disorder, and insomnia; physical therapy; home exercises; an ankle brace; and acupuncture," as well as medication for her anxiety, and one-on-one counseling for approximately one year between 2006 and 2007, and for another five months in 2009. [AR at 29, 32.] According to the ALJ, "the lack of more aggressive treatment, including surgical intervention for the more severe musculoskeletal impairments," and the "benign documented clinical findings from mental status examinations . . . and . . . lack of more aggressive [mental health] treatment," are inconsistent with the alleged severity of plaintiff's functional limitations, and suggest that plaintiff's symptoms and limitations are not as severe as she alleged. [AR at 29.]

Preliminarily, an ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)) (emphasis added). Here, however, plaintiff was treated with multiple prescription medications, including opiates, for her physical and mental impairments, and also received

9

supportive treatment including injections[5] [see, e.g., AR at 52-53, 322, 830, 835], physical therapy, home exercises, a TENS unit, an ankle brace, acupuncture, and mental health counseling. Plaintiff testified that she was not able to attend more counseling sessions because her insurance would not cover it.[6] [AR at 52.] In addition to the treatment described above, plaintiff's doctors also sought authorization for orthotics, night splints for her plantar faciitis, and a knee brace. [See, e.g., AR at 327, 369, 380.]

The ALJ failed to articulate what, if any, other treatment was currently recommended or available for plaintiff's physical and mental impairments. Although he noted that plaintiff had not undergone any "surgical intervention" for her more severe musculoskeletal impairments, there is no evidence in the record that surgery had yet been recommended for plaintiff.[7] Additionally, the ALJ failed to point to anything in the record to show that any specific surgical or more invasive procedures in addition to the treatment plaintiff was receiving (e.g., treatment by a pain management specialist; prescription pain medication, including opiates, to control plaintiff's pain; injections; physical therapy; acupuncture; electrical stimulation; home exercises; prescription medication to control plaintiff's mental health impairments; mental health counseling), or had been recommended to receive (e.g., orthotics, night splints, knee brace), is a standard method for treating individuals with the type of pain or mental limitations caused by plaintiff's physical and mental impairments.

Plaintiff also notes that the ALJ also did not provide any discussion regarding the alleged

---

[5] The ALJ did not mention the fact that plaintiff received injections in her knee and shoulder.

[6] A claimant's failure to receive treatment during a period when she has no medical insurance cannot support an adverse credibility finding. Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds) (citing Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)).

[7] The Court notes that on October 3, 2008, Khalid B. Ahmed, M.D., an orthopedic surgeon and plaintiff's primary treating physician for her workers' compensation case, opined that sometime in the "near future," it was "more probable than possible" that plaintiff "might need access for arthroscopic surgery with debridement and reconstruction of the ACL ligament" of the right knee, as well as "arthroscopic surgery with possible open rotator cuff repair" of the left shoulder. [AR at 349.]

side effects of plaintiff's medications[8] -- which she testified included sleepiness, forgetfulness, inability to concentrate and stay on task, and nausea -- and state any reasons why he found that this testimony was not credible. [AR at 49-50, 53-57, 61-62, 65-66.] The Court's review of the record shows that plaintiff also reported these side effects to her treating providers. [See, e.g., AR at 227, 229, 231, 232, 233, 243, 247, 255, 327, 337, 404, 433, 445, 456, 737, 836.]

Based on the foregoing, the Court concludes that plaintiff's allegedly "conservative" treatment for her physical and mental complaints was not a specific, clear and convincing reason to discount plaintiff's credibility. Additionally, because the ALJ never discussed plaintiff's testimony regarding her alleged medication side effects, on remand the ALJ shall also consider the impact of plaintiff's medication side effects, if any, on plaintiff's RFC.

### 2. Objective Medical Evidence

While a lack of objective medical evidence supporting a plaintiff's subjective complaints is one factor that an ALJ can consider in evaluating symptom testimony, it cannot provide the only basis to reject a claimant's credibility. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Because this reason by itself cannot be the sole legally sufficient reason for discounting plaintiff's credibility, the ALJ's credibility determination rises or falls with the ALJ's only other ground for discrediting plaintiff -- that she had received routine conservative treatment. Because, as discussed above, the Court finds that the only other reason for discounting plaintiff's subjective complaints was not specific, clear and convincing, the ALJ on remand may also need to redetermine the extent to which the objective medical evidence supports plaintiff's allegations.

---

[8] On the date of the hearing plaintiff testified that her medications included Xanax, Restoril, Neurontin, Buspar, and Pristiq as prescribed by Dr. Kohut. [AR at 61 (see also AR at 218 (listing Colace, Lidocaine, Norco, Phenergan, Pristiq, Restoril, Xanax, Xopenex, and Zofran), 811 (noting that plaintiff had also tried Celexa, Topamax, Cymbalta, Paxil, Prozac, and Effexor).]

**3. Conclusion**

Based on the foregoing, the ALJ did not provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony and remand is warranted.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting her testimony. To the extent the ALJ's reconsideration of plaintiff's credibility impacts the ALJ's evaluation of the medical findings and opinions, or the ALJ's evaluation of any functional limitations caused by plaintiff's physical or mental impairments, or medication side effects, it is not the Court's intent to limit consideration of these issues. Next, the ALJ shall reconsider all of plaintiff's limitations in making his RFC determination. Thereafter, with the assistance of a VE, if such testimony is warranted, the ALJ shall proceed to step five to determine whether there are

jobs existing in significant numbers in the national economy that plaintiff can still perform.[9]

### VII.
### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 27, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[9] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.